UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE LeROND WILLIAMS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DR PIERRE S. HENDRICKS et al.,<br><br>　　　　　Defendants. | No. 2:10-cv-1873 KJM DAD P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. This matter is before the court on a motion to dismiss brought on behalf of defendant Dr. Hendricks. Plaintiff has filed an opposition to the motion, and defendant has filed a reply.

**BACKGROUND**

Plaintiff is proceeding on his second amended complaint[1] against defendants Dr. Fortaleza and Dr. Hendricks.[2] Therein, plaintiff alleges that in July 2006, he began complaining of knee

---

[1] By order filed July 14, 2011, plaintiff's original complaint was dismissed for failure to satisfy the requirements of Federal Rule Civil Procedure 8(a)(2), with leave to amend granted. (Doc. No. 15.) Plaintiff filed an amended complaint on October 14, 2011 and a second amended complaint on May 17, 2012. (Doc. Nos. 20 & 22.)

[2] Defendant Dr. Fortaleza is represented by separate counsel in this action and has also filed a motion to dismiss, which the court will address in separate findings and recommendations.

1

problems to prison medical staff.  Over the course of the next year, plaintiff saw multiple doctors including defendant Dr. Fortaleza and orthopedic specialist defendant Dr. Hendricks.  Plaintiff complains that defendant Dr. Fortaleza should have ordered an MRI for him and referred him to an orthopedic specialist earlier than he did.  Plaintiff further complains that defendant Dr. Hendricks also should have ordered an MRI for him, but instead, he ordered and then cancelled diagnostic arthroscopy of plaintiff's right knee.  According to plaintiff, the defendants were trying to save the prison money rather than provide him appropriate medical care, and it was not until he transferred to CSP-Solano in September 2007, that a Dr. Daszko ordered an MRI of his knee, which revealed a probable tear of the medial meniscus.  In October of 2008, plaintiff underwent knee surgery.  Plaintiff claims that defendant Dr. Fortaleza and defendant Dr. Hendricks were deliberately indifferent to his serious medical needs and requests damages and injunctive relief.  (Sec. Am. Compl. (Doc. No. 22) at 4-11 & Exs.)

**ANALYSIS**

I. Motion Pursuant to Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint.  North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  Dismissal of the complaint, or any claim within it, "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  See also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).  In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In determining whether a pleading states a claim, the court accepts as true all material allegations in the complaint and construes those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In the context of a motion to

dismiss, the court also resolves doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).

II. Discussion

In the pending motion to dismiss, defense counsel argues that plaintiff has failed to plead sufficient facts to state an Eighth Amendment deliberate indifference claim against defendant Dr. Hendricks. (Def.'s Mot. to Dismiss (Doc. No. 46) at 7-10.) Upon further review of plaintiff's second amended complaint and the exhibits attached thereto as well as consideration of defendant's arguments, the court agrees. Specifically, in plaintiff's second amended complaint, he alleges in relevant part that on December 21, 2006, he saw defendant Dr. Hendricks and explained the symptoms he was experiencing with his knee. (Sec. Am. Compl. at 6.) Defendant Dr. Hendricks examined plaintiff's knee but could not determine what, if anything, was wrong with his knee. (Id. at 6-7.) However, because plaintiff had pre-existing shot-gun pellets in his knee that could have moved into the joint, defendant Hendricks immediately ordered an x-ray for plaintiff and studied the film with the radiologist that day. (Id. at 7 & Ex. 11.) The x-ray result was normal. (Id.) Plaintiff alleges that defendant Dr. Hendricks rejected plaintiff's own request for an MRI and instead suggested that he could benefit from a knee-strengthening regimen and ordered a six-week follow-up examination. (Id. at 7.) On February 1, 2007, plaintiff saw defendant Dr. Hendricks again. (Id.) The defendant told plaintiff at that time that the metallic pellets in his leg prevented him from getting an MRI, but if he wanted to pursue an arthroscopic exploration of the knee, defendant Dr. Hendricks could fix any problems he found during such a

1  procedure.  (Id. & Ex. 14A.)  Plaintiff agreed to the arthroscopic procedure.  (Id.)  However, by

2  March of the following year, plaintiff alleges that defendant Dr. Hendricks knew plaintiff would

3  be transferred to a different prison and that any new doctors would not see the logic in his

4  decision for arthroscopic exploration without an MRI being performed first, so defendant Dr.

5  Hendricks called plaintiff to the clinic for an unscheduled appointment and cancelled his

6  arthroscopic surgery.  (Id. at 7-8 & Exs. 15A-& 15B.)

7  　　　　Even liberally construing the allegations of plaintiff's second amended complaint, the

8  court now finds that plaintiff's complaint fails to allege sufficient facts to plausibly suggest that

9  he is entitled to relief against defendant Dr. Hendricks under the Eighth Amendment.  See

10  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff

11  pleads factual content that allows the court to draw the reasonable inference that the defendant is

12  liable for the misconduct alleged.").  While plaintiff alleges that he had a serious medical need, he

13  fails to allege any facts suggesting how defendant Dr. Hendricks' conduct rose to the level of

14  deliberate indifference to that serious medical need.  See McGuckin v. Smith, 974 F.2d 1050,

15  1059-60 (9th Cir. 1991) ("A defendant must purposefully ignore or fail to respond to a prisoner's

16  pain or possible medical need in order for deliberate indifference to be established."), overruled

17  on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

18  　　　　Specifically, plaintiff's allegations against defendant Dr. Hendricks pertain to the doctor's

19  failure to order an MRI and his decision to cancel  arthroscopic exploration of plaintiff's right

20  knee.  To support this claim, plaintiff points to CSP-Solano Dr. Daszko's subsequent decision to

21  order an MRI of plaintiff's knee, and a Dr. Freedhand's decision to operate on his knee.  At most,

22  however, plaintiff allegations, if established, would reflect his mere difference of opinion with

23  defendant Dr. Hendricks regarding the proper course of treatment or a mere difference of opinion

24  between defendant Dr. Hendricks on the one hand and Dr. Daszko and Dr. Freedhand on the other

25  hand in that regard.  Of course, it is well established that a mere difference of opinion between a

26  prisoner and prison medical staff or between medical personnel as to the proper course of medical

27  care does not give rise to a cognizable § 1983 claim.  See Snow v. McDaniel, 681 F.3d 978, 988

28  (9th Cir. 2012); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d

240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981); cf. Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

      Moreover, even assuming that defendant Dr. Hendricks should have ordered an MRI or conducted arthroscopic exploration of plaintiff's knee, it is well established that before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Here, defendant Dr. Hendricks' treatment of plaintiff's knee, insofar as it could be deemed inadequate at all, could only be said to have risen to the level of malpractice and not to deliberate indifference. See Farmer v. Brennan, 511 U.S. 825 (1994) (deliberate indifference to a medical need is shown when a prison official knows that an inmate has a serious medical need and disregards that need by failing to respond reasonably); Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) ("In determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect.")[3] It is noteworthy that

---

[3] As one court has observed under similar circumstances:

> After reviewing the exhibits incorporated into the Complaint, the Court further finds that, under the foregoing standards, plaintiff's allegations against Chief Medical Officer Kumar based on her refusal to approve plaintiff for total knee replacement surgery are insufficient to satisfy the "deliberate indifference" element of a federal civil rights claim based on inadequate medical care because they at most establish a difference of opinion over whether the total knee replacement surgery was the optimal treatment option for plaintiff at that time. Plaintiff's conclusory allegation that Dr. Kumar has "shown deliberate indifference" does not satisfy plaintiff's pleading burden under Twombly and Iqbal. See also Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d

5

plaintiff himself alleges that defendant Dr. Hendricks ordered that plaintiff's knee be x-rayed, conducted a follow-up exam after a course of strengthening exercise and ultimately proposed to perform an arthroscopic exploration of plaintiff's knee at which time he suggested he could address any condition in need of repair.

Finally, the court notes that plaintiff summarily alleges at the end of his complaint that defendant Dr. Hendricks declined to order an MRI of plaintiff's knee simply to save the prison medical expenses and canceled his arthroscopic exploration of the knee because he did not want plaintiff transferred to another prison with his order for surgery, which was not based on an MRI or technical detection methods. (Sec. Am. Compl. at 13.) However, the Supreme Court has made clear that:

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawful. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops shorts of the line between possibility and plausibility of entitlement to relief. (internal citations and quotations omitted)

Iqbal, 556 U.S. at 678. Here, plaintiff's conclusory allegations that defendant Dr. Hendricks acted with a financial motive of saving the prison money when he decided not to order an MRI and that he canceled arthroscopic exploration of plaintiff's right knee because he did not want plaintiff transferred to another prison accompanied by his order for arthroscopic surgery unsupported by technical detection methods, without more, "do not allow the court to infer more than the mere possibility of misconduct." Id. at 679. See also Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.) (the court is not required to "accept as true allegations that are merely conclusory, require unwarranted deductions or unreasonable inferences.") (internal

---

209 (1986) (holding that, in determining whether a complaint states a claim on which relief may be granted, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Felton v. Lauritzen, No. CV 11-4103-VAP (RNB), 2011 WL 2133807, at *3 (C.D. Cal. May 27, 2011)

quotations omitted), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001): Butler v. Kelso, Civil No. 11cv-2884 CAB (RBB), 2013 WL 1883233 at *9 (S.D. Cal. May 2, 2013) (prisoner-plaintiff failed to provide sufficient factual allegations necessary for the court to accept his bare conclusion that the defendants' medical treatment decisions were based on the need to save money). In this regard, plaintiff's allegations against defendant Dr. Hendricks have simply not "nudged [his] claims across the line from conceivable to plausible." Bell Atlantic, 550 U.S. at 570.

Moreover, the exhibits attached to plaintiff's complaint contradict his theories as to why defendant Dr. Hendricks made the medical treatment decisions he did in plaintiff's case. See Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) ("We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."); Sprewell, 266 F.3d at 988 (same); Roth v. Garcia Marquez, 942 F.2d 617, 625 n.1 (9th Cir. 1991) ("Moreover, when the allegations of the complaint are refuted by an attached document, the Court need not accept the allegations as being true.").

According to plaintiff's Exhibit 14A, defendant Dr. Hendricks did not order an MRI of plaintiff's knee because an MRI would be contraindicated in light of the bullet/metallic fragments in plaintiff's knee. Defendant Dr. Hendricks considered an arthogram, but that too was contraindicated because of plaintiff's allergy to Iodine. Under these circumstances, defendant Dr. Hendricks believed that the only remaining way to fully evaluate plaintiff's right knee was through a diagnostic arthroscopy because it was possible that one of the pellets present in his knee was causing symptoms, or there could be a meniscal tear. Dr. Hendricks' plan was to re-examine plaintiff after his surgery was scheduled. According to plaintiff's Exhibit 15A, during defendant Dr. Hendricks' subsequent reexamination of plaintiff, plaintiff did not appear to be in any degree of distress and was ambulating normally without a limp. His right knee revealed no swelling or deformity, and there was no effusion. Plaintiff had full range of motion, and no joint line tenderness. Defendant Dr. Hendricks noted that he was reconsidering the recommendation

for arthroscopic surgery because of plaintiff's absolutely normal physical examination. Dr. Hendricks wanted to see if it were possible to get an MRI and requested that a radiologist be contacted to determine whether or not shotgun pellets in the soft tissue is a true contraindication for performing an MRI. If not, then he wanted plaintiff to undergo an MRI and base his decision on MRI results. If an MRI was unavailable as defendant Dr. Hendricks believed to be the case, he planned to discuss the option of a diagnostic arthroscopy with plaintiff again on his next visit in one month. Twelve days later, plaintiff was transferred to CSP-Solano. (Sec. Am. Compl. Exs. 14A & 15A.) Based on plaintiff's detailed medical records, this court simply cannot draw a reasonable inference that defendant Dr. Hendricks was deliberately indifferent to plaintiff's serious medical needs.

III. The Complaint Should Be Dismissed Without Leave to Amend

Plaintiff is proceeding on his second amended complaint. His original complaint was dismissed with leave to amend and he was at that time provided with the legal standards which govern the constitutional claim that he is attempting to pursue in this action. The undersigned concludes that plaintiff cannot cure the deficiencies of his second amended complaint. Rather, for the reasons discussed above, the allegations of plaintiff's second amended complaint at most establish a mere difference of opinion, negligence, or medical malpractice and fall short of stating a cognizable Eighth Amendment claim under the applicable deliberate indifference standard. Where, as here, it is clear that the complaint suffers from pleading deficiencies that cannot be cured by amendment, dismissal without leave to amend is appropriate. See Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (there is no need to prolong the litigation by permitting further amendment where the "basic flaw" in the underlying facts as alleged cannot be cured by amendment); Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be futile, there was no need to prolong the litigation by permitting further amendment.").

Accordingly, for all of the foregoing reasons, the court concludes that defendant Hendricks' motion to dismiss should be granted, and plaintiff's second amended complaint should be dismissed without leave to amend.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that defendant Hendricks' motion to dismiss (Doc. No. 46) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 14, 2014

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
will1873.57hendricks